# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# DURHAM DIVISION

| | |
|---|---|
| **ETHEL THOMAS WOOD, EXECUTOR OF THE ESTATE OF JAMES WAVERLY WOOD, DECEASED,** | **CIVIL ACTION** <br> **No. 1:14-cv-1004** |
| Plaintiff, | |
| **V.** | |
| **UNITED STATES OF AMERICA,** | |
| Defendant. | |

## COMPLAINT

### PRELIMINARY STATEMENT

1. James Waverly Wood was a United States citizen and Vietnam War veteran having served honorably with the United States Air Force.

2. James Waverly Wood died at the Veteran's Administration Hospital, Durham, North Carolina on August 23, 2012 following his surgery on August 9, 2012 for four vessel coronary artery disease with by-pass grafting and a left anterior descending artery endarterectomy.

3. Plaintiff, Ethel Thomas Wood, qualified as the Executor of the Estate of James Waverly Wood on June 14, 2013 in the Circuit Court of the County of Amherst, Virginia.

4. Plaintiff brings this action against the Defendant Unites States of America under the Federal Tort Claims Act.

### JURISDICTION AND VENUE

1

5. This Court has jurisdiction over the subject matter of this Complaint under 28 U.S.C. §§ 1331 and 1346(b).

6. On December 12, 2013, Plaintiff submitted a Claim for Damage, Injury, or Death (SF-95) to the U.S. Department of Veterans Affairs, Office of Regional Counsel, 251 North Main Street, Winston-Salem, NC 27155. Plaintiff's claim was denied as not amendable to administrative settlement by letter dated June 6, 2014. Plaintiff has therefore exhausted all available administrative remedies.

7. Venue is properly within this District under 28 U.S.C. § 1402(b) as the acts that are the subject of this Complaint occurred within the District, in Durham, North Carolina.

## PARTIES

8. The Plaintiff Ethel Thomas Wood and her deceased husband James Waverly Wood resided at all times relevant to this Complaint in Madison Heights, Virginia.

9. At all times relevant, the health care personnel attending the Plaintiff's decedent (hereinafter Mr. Wood) in the operating room on August 9, 2012 had the responsibility for insuring that the Mr. Wood's central line remained intact and were acting within the scope and course of their employment with the Veterans Administration and, as such, Defendant United States of America is the appropriate defendant under the Federal Tort Claims Act.

## FACTUAL ALLEGATIONS

10. On August 9, 2012 at approximately 14:15 the left internal jugular vein central line providing vasoactive medications to Mr. Wood was removed or "pulled out" while Mr. Wood was being transferred from the operating room bed to a hospital bed for transport to the recovery unit.

11. When it was noticed that the central line was not functional the vasoactive medications were administered through a peripheral vein.

12. The vasoactive medications by means of a peripheral line were ineffective in maintaining Mr. Wood's blood pressure.

13. Hypotension resulted which required open cardiac massage and epinephrine boluses.

14. Mr. Wood's blood pressure did not return until 14:32.

15. The 17 minute period during which Mr. Wood had no blood pressure resulted in total body anoxia with multiple system damage.

16. Vasoactive medications were resumed through a new femoral venous line at 14:32.

17. Mr. Wood's chest was left open to manage Mr. Wood's right ventricular failure.

18. Mr. Wood experienced four more episodes of profound hypotension between 14:32 and 16:00 which were treated with epinephrine, cardiac massage, and intra-arterial balloon placement.

19. A transesophageal echocardiogram reported severe global right ventricular failure with severe TR.

20. Mr. Wood was transferred out of the operating room to the Surgical Intensive Care Unit by means of a monitored bed.

21. After transfer to the Surgical Intensive Care Unit bed Mr. Wood was again noted to have hypotension and absence of pulse which was treated by increasing the vasopressin rate and intubation with mechanical ventilation.

22. Mr. Wood's assessment reported cardiogenic shock with severe right ventricular failure.

23. Mr. Wood's chest was left open until August 14, 2012 in order to manage his persisting right ventricular failure.

24. Mr. Wood's chest wound was closed on August 14, 2012.

25. Mr. Wood was taken to the operating room for placement of a tracheostomy on August 20, 2012.

26. Between August 16, 2012 and August 23, 2012, Mr. Wood was only marginally responsive and he continued to have hypotension and cardiac arrhythmias despite aggressive vasoactive medication therapy.

27. A decision was made to place a "do not resuscitate" order.

28. Mr. Wood died at 04:18, August 23, 2012.

29. Removal of Mr. Wood's internal jugular vein central line during transfer from the operating room bed to the transfer bed on August 9, 2012 was the proximate cause of Mr. Wood's total body anoxia with multiple system damage which led to his death on August 23, 2012.

30. The transfer of a patient from the operating room bed to the transfer bed was accomplished in Mr. Wood's case by the joint efforts of surgical, nursing, and anesthesia caregivers.

31. The anesthesia caregivers were charged with the primary responsibility for insuring that Mr. Wood's internal jugular vein central line remained intact during transfer.

32. The Defendant was charged with the responsibility for providing a safe environment for transferring Mr. Wood from the operating room bed to the transfer bed.

## CAUSES OF ACTION

### Cout I

### Plaintiff v. Defendant United States of America
### Federal Tort Claims Act – Medical Malpractice

33. The Defendants anesthesia caregivers, or health care providers under their supervision, pulled out and/or removed Mr. Wood's internal jugular vein central line in violation of the applicable standard of care by failing to:

(a) properly connect and/or secure Mr. Wood's internal jugular vein central line;

(b) insure that Mr. Wood's internal jugular vein line remained intact during the transfer;

(c) supervise personnel who improperly placed/pulled out Mr. Wood's internal jugular vein central line;

(d) adequately supervise personnel who improperly placed/pulled out Mr. Wood's internal jugular vein central line;

(e) take all appropriate steps in the transfer of Mr. Wood from the operating room bed to the transfer bed so as to insure that the internal jugular vein line remained intact;

(f) timely diagnose that Mr. Wood's internal jugular vein central line had been improperly placed/pulled out;

(i) timely re-insert a central line for Mr. Woods;

(j) prepare a perioperative anesthesia record; and

(k) follow policies, procedures, guidelines, and/or protocols for the safe transfer of a patient with a central line.

34. Alternatively, the Defendant violated the standard of care by failing to adopt and/or implement guidelines, protocols, policies, and/or procedures for the safe transfer of a patient with an internal jugular vein central line from an operating table to a transfer bed.

5

35. At all times relevant, the surgical, nursing, and anesthesia caregivers involved in the transfer of Mr. Wood from the operating room bed to the transfer bed on August 9, 2012 were agents, servants, and/or employees of the Veterans Administration acting within the scope of their agency, servanthood, or employment.

36. At all times relevant, any surgical or nursing personnel involved in the transfer of Mr. Woods from the operating room table to the transfer bed were under the supervision of anesthesia providers.

37. The medical care provided by the aforementioned caregivers and all records pertaining to the alleged negligence that are available to the Plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702(e) of the N.C. Rules of Evidence and is willing to testify that the medical care did not comply with the applicable standard of care.

38. Under the Federal Tort Claims Act, defendant United States of America is liable for these actions/omissions.

**Count II**

**Plaintiff v. United States of America**
**Federal Tort Claims Act – Premises Liability**

39. On August 9, 2012, Mr. Wood's global hypoxic event and subsequent death were proximately caused by a defect or condition on premises owned by the Defendant, to-wit: either the absence or inadequacy of safe practice guidelines or protocols applicable to operating room personnel for maintaining an intact/connected central line during the transfer of a patient from the operating room table to a transfer bed.

40. Alternatively, the Defendants agents, servants, and or employees attending Mr. Wood within the scope of their agency, servanthood, or employment failed to follow safe practice guidelines or protocols adopted by the Defendant for maintaining an intact' connected central line during transfer of a patient from the operating room table to a transfer bed.

41. Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions/omissions.

WHEREFORE, Plaintiff respectfully requests:

(1) That Plaintiff, Ethel Thomas Wood, Executor of the Estate of James Waverly Wood, deceased, have and recover of the Defendant a sum in excess of $10,000.00 dollars for the elements of damage set forth in N.C.G.S. 28A-18-2(b) for the negligence alleged herein which proximately caused the death of Mr. Wood;

(2) That the costs of this action be taxed against the Defendant;

(3) That the Plaintiff recover prejudgment interest as of the date of the filing of this Complaint; and

(4) Such other and further relief as may appear just and appropriate.

Respectfully submitted this the 1st day of December, 2014.

ETHEL THOMAS WOOD, Executor of the
Estate of JAMES WAVERLY WOOD,


By: /s/ Fred D. Smith, Jr.
      Of Counsel

Fred D. Smith, Jr. (NCB No.: 25887)
FRED D. SMITH, JR., P.C.
46 West Main Street
Post Office Box 991
Martinsville, VA 24114
(276) 638-2555 (Telephone)
(276) 638-2550 (Facsimile)
freddsmithjr@embarqmail.com
    *Counsel for Plaintiff*